IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES ELDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-966 |
| | § | |
| PDC LOGIC, LLC and HIJET BIT, | § | |
| LLC, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court[1] is Defendants PDC Logic, LLC ("PDC Logic") and Hijet Bit, LLC's ("Hijet") (collectively, "Defendants") Motion for Summary Judgment (Doc. 35). The court has considered the motion, Defendants' supplement, Plaintiff's response, Defendants' reply, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants' motion be **DENIED**.

## I.  Case Background

On April 8, 2016, Plaintiff filed this action against Defendants alleging that they discriminated against him on the basis of disability and age in violation of the Americans with Disabilities Act[2] ("ADA"), the Age Discrimination in Employment Act[3]

---

[1]      This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 19, Ord. Dated Sept. 7, 2016.

[2]      42 U.S.C. § 12112.

[3]      29 U.S.C. §§ 621-634.

("ADEA"), and the Texas Commission on Human Rights Act[4] ("TCHRA").[5]

## A. **Hiring of Plaintiff**

PDC Logic and Hijet are related entities[6] that operate in the oil and gas industry.[7] Hijet is an entity based out of Norman, Oklahoma, that sells and distributes well drill bits.[8] PDC Logic, a manufacturing plant based on Conroe, Texas, manufactures polycrystalline diamond cutter drill bits that are then sold through Hijet.[9]

Plaintiff was hired by Defendants in February 2015 as the director of sales, a new position geared to establish Defendants in the Dallas and Houston markets.[10] As director of sales, Plaintiff's role was to oversee the sales managers in Houston, increase the Dallas market, and assist sales in locations such as San Antonio

---

[4]    Tex. Lab. Code §§ 21.001-21.556.

[5]    See Doc. 1, Pl.'s Compl.

[6]    For the purposes of their motion for summary judgment, Defendants asked to be treated as joint employers, without making that concession. See Doc. 35, Defs.' Mot. for Summ. J. p. 2 ("[Plaintiff] alleges that 'PDC and Hijet are Joint-Employers of Plaintiff.' Without conceding that this is indeed the case, Hijet and PDCL will be treated as joint employers for purposes of this motion.").

[7]    See Doc. 35-4, Ex. D to Def.'s Mot. for Summ. J., Aff. of Chad Israel Waitman ¶ 3.

[8]    See id.

[9]    See id.

[10]   See Doc. 35-4, Ex. D to Def.'s Mot. for Summ. J., Aff. of Chad Israel Waitman ¶ 5; Doc. 49-1, Ex. 1 to Pl.'s Resp., Dep. of Pl. pp. 6-8, 10, 12; Doc. 49-4, Ex. 4 to Pl.'s Resp., Pl.'s Offer Ltr.; Doc. 49-5, Ex. 5 to Pl.'s Resp., Emails Between Rafe Neasbitt and Jim Elder, Dated February 11-12, 2015 pp. 1-2; Doc. 49-6, Ex. 6 to Pl.'s Resp., Email from Pl. to Chad Israel Waitman, Dated Jan. 26, 2015 pp. 1-2.

and Denver.[11]  While he was director of sales, Plaintiff made two new hires, Mike Matthews ("Matthews") and Jay Lacombe ("Lacombe") for the Houston office and relocated a third person, Dan Martinez ("Martinez"), from the Midland office.[12]  Martinez was given a raise in August 2015.[13]  Rafe Neasbitt ("Neasbitt"), the vice president of operations for PDC Logic, directly supervised Plaintiff.[14]

Plaintiff met with Neasbitt in Norman, Oklahoma, on September 2, 2015.[15]  Neasbitt advised Plaintiff that he was feeling overworked and intended to rely on Plaintiff more.[16]  Plaintiff informed Neasbitt, for the first time, that he was experiencing kidney failure and that he would have to undergo dialysis and, eventually, a kidney transplant.[17]  Because the dialysis was to take place after work, Plaintiff assured Neasbitt that it would not impede him from working, and he requested to utilize four of his fifteen available vacation days for kidney dialysis training.[18]

---

[11]  See Doc. 49-1, Ex. 1 to Pl.'s Resp., Dep. of Pl. p. 12.

[12]  See id. pp. 12, 20-21; Doc. 49-7, Ex. 7 to Pl.'s Resp., Def. Hijet's Resp. to Pl.'s 1st Set of Requests for Admissions p. 1.

[13]  See Doc. 49-10, Ex. 10 to Pl.'s Resp., Martinez's Not. of Salary Increase p. 1.

[14]  See Doc. 49-2, Ex. 2 to Pl.'s Resp., Dep. of Neasbitt pp. 5, 48.

[15]  See Doc. 49-1, Ex. 1 to Pl.'s Resp., Dep. of Pl. pp. 68-69; Doc. 49-2, Ex. 2 to Pl.'s Resp., Dep. of Neasbitt pp. 66-67; Doc. 49-19, Ex. 19 to Pl.'s Resp., Emails Between Neasbitt & Pl. Dated Aug. 24, 2015 pp. 1-2.

[16]  See Doc. 49-2, Ex. 2 to Pl.'s Resp., Dep. of Neasbitt pp. 50-52.

[17]  See id. pp. 54-55; Doc. 49-1, Ex. 1 to Pl.'s Resp., Dep. of Pl. pp. 68-69.

[18]  See Doc. 49-1, Ex. 1 to Pl.'s Resp., Dep. of Pl. p. 69.

Plaintiff informed Neasbitt that he planned to begin dialysis on October 26, 2015.[19]  After the meeting, Neasbitt told Chad Waitman ("Waitman"), President of Hijet, about Plaintiff's health problems.[20]

## B.  Plaintiff's Termination and Subsequent Hirings

On October 23, 2015, Neasbitt met with Matthews and Plaintiff at the manufacturing plant in Conroe and told them both that they were terminated and their jobs eliminated.[21]  Plaintiff testified that he was not expecting to be fired and reminded Neasbitt that he would be undergoing dialysis that following Monday.[22]  At the time of their firings, Plaintiff was fifty-eight years old and Matthews was sixty-four.[23]  Plaintiff did not immediately sign the severance letter and told Neasbitt that he wanted to investigate what his rights were before signing the letter.[24]  Five days later, Waitman sent an email telling Plaintiff that "[i]f your concern is in regard to your health insurance, we would be willing to keep you on the health insurance and pay it for the next five months instead of

---

[19]    See id.

[20]    See Doc. 35-4, Ex. D to Defs.' Mot. for Summ. J., Aff. of Waitman ¶ 2; Doc. 49-2, Ex. 2 to Pl.'s Resp., Dep. of Neasbitt pp. 58-59; Doc. 49-3, Ex. 3 to Pl.'s Resp., Dep. of Waitman 81-82.

[21]    See Doc. 49-1, Ex. 1 to Pl.'s Resp., Dep. of Pl. pp. 77-79; Doc. 49-2, Ex. 2 to Pl.'s Resp., Dep. of Neasbitt pp. 75, 78-79.

[22]    See Doc. 49-1, Ex. 1 to Pl.'s Resp., Dep. of Pl. pp. 78-79.

[23]    See id. p. 203; Doc. 49-13, Ex. 13 to Pl.'s Resp., Hijet Oct. 2015 Layoff List.

[24]    See Doc. 49-1, Ex. 1 to Pl.'s Resp., Dep. of Pl. pp. 78-79.

the severance payment."[25]

After termination, Plaintiff asked to be considered for a territory manager position.[26] However, that position was occupied by a long-time employee who had just relocated from Oklahoma to take the position.[27] Additionally, if Plaintiff were to be awarded the position, he would have been required to take a forty-percent pay cut and relocate to San Antonio.[28] On October 30, 2015, Neasbitt informed Plaintiff that Defendants did not want to fire the position's incumbent and rehire Plaintiff for the territory manager position.[29] Neasbitt later testified that while they never considered bringing Plaintiff back to work because of market conditions at the time, they did not consider his rehire a possibility once he filed this lawsuit.[30]

Martinez, who was thirty-four at the time of Plaintiff's termination, was kept on but was transferred to his former

---

[25]    See Doc. 49-3, Ex. 3 to Pl.'s Resp., Dep. of Waitman pp. 52-53; Doc. 49-22, Ex. 22 to Pl.'s Resp., Email from Waitman to Plaintiff, Dated Oct. 28, 2015.

[26]    See Doc. 49-1, Ex. 1 to Pl.'s Resp., Dep. of Pl. pp. 51-54; Doc. 49-2, Ex. 2 to Pl.'s Resp., Dep. of Neasbitt pp. 78-79; Doc. 49-3, Ex. 3 to Pl.'s Resp., Dep. of Waitman pp. 130-31.

[27]    Id. p. 132.

[28]    Id.

[29]    See id. pp. 78-79, 81-82.

[30]    See id. pp. 85, 119-20.

technical support role full-time.[31]  Lacombe, who was thirty-eight
at the time of Plaintiff's termination, retained his position as
account manager.[32]  In May 2016, Jero Rispone ("Rispone") was hired
in the Houston office as an account manager.[33]  Waitman testified
that Rispone was hired because Rispone had an established portfolio
of customers and the market had been rising after bottoming out.[34]
Rispone was thirty-four years old when he was hired by Defendants.[35]

In June 2016, Brian Stanley ("Stanley"), a thirty-seven year
old, was hired as a vice president of sales and his role was to
supervise all of the national account managers.[36]  Until Stanley was
hired, Neasbitt performed Plaintiff's job functions.[37]  Neasbitt
explained that when Stanley was hired, the oil market was
improving.[38]  Stanley was based in Houston and worked in Defendants'
locations in Conroe and Katy, Texas.[39]  Tim Geiser was also hired

---

[31]    See id. p. 129; Doc. 35-1, Ex. A to Def.'s Mot. for Summ. J, Dep. of
Neasbitt pp. 130-31.

[32]    See Doc. 49-2, Ex. 2 to Pl.'s Resp., Dep. of Neasbitt p. 134.

[33]    See id. p. 129; Doc. 49-3, Ex. 3 to Pl.'s Resp., Dep. of Waitman pp.
92-95; Doc. 49-28, Ex. 28 to Pl.'s Resp., Offer Letter to Rispone.

[34]    See Doc. 49-3, Ex. 3 to Pl.'s Resp., Dep. of Waitman pp. 92-95.

[35]    See Doc. 49-7, Ex. 7 to Pl.'s Resp., Def. Hijet's Response to Pl.'s
1st Set of Interrogatories p. 1.

[36]    See Doc. 49-3, Ex. 3 to Pl.'s Resp., Dep. of Waitman pp. 103-04; Doc.
49-7, Ex. 7 to Pl.'s Resp., Def. Hijet's Resp. to Pl.'s 1st Set of Requests for
Admission p. 2.

[37]    See Doc. 49-2, Ex. 2 to Pl.'s Resp., Dep. of Neasbitt p. 128.

[38]    See id. pp. 144-45.

[39]    See Doc. 49-3, Ex. 3 to Pl.'s Resp., Dep. of Waitman p. 132.

by Defendants a few months after Plaintiff was fired.[40]   He was hired as a national account manager based in Denver, Colorado.[41]

## C. **Reduction in Force Due to Market Conditions**

Defendants explain that Plaintiff's layoff was part of a reduction-in-force implemented because of a downturn in the oil market.   Defendants have provided evidence supporting this justification in their summary judgment evidence.

The evidence showed that the price per barrel of oil began dropping in late 2014 from a peak on June 20, 2014, of $107.23.[42] It hit a low point on January 30, 2015, but began to rise again to $51.14 on February 13, 2015, around the time Plaintiff was hired.[43] The price per barrel fluctuated throughout the time that Plaintiff worked for Defendants, ranging from around $60.00 per barrel to a low of $40.00 per barrel.[44]   In May and June 2015, the price per barrel reached around $60.00 per barrel, and held steady until July 2015, when it began dropping again from $60.00 per barrel to a low point of $40.73 in August 2015.[45]   On the day Plaintiff was fired,

---

[40]    See Doc. 49-2, Ex. 2 to Pl.'s Resp., Dep. of Neasbitt pp. 132–34.

[41]    See id.; Doc. 49-3, Ex. 3 to Pl.'s Resp., Dep. of Waitman p. 108.

[42]    See Doc. 35-10, Ex. 5 to Def.'s Mot. for Summ. J., Price for W. Tex. Intermediate Crude Oil vs. U.S. Rig Count Chart p. 1.

[43]    See id.

[44]    See id. pp. 2–3.

[45]    See id. pp. 2–3.

the price per barrel was $45.16.[46]  After Plaintiff was fired, the price per barrel again fell, reaching a low point of $28.14 on February 12, 2016.[47]  After reaching this bottom price, it began to rise again, with the price per barrel ranging from the low to high forties, starting in April 2016.[48]  The rig count, with a peak of 1,931 in September 2014, began steadily dropping in October 2014, reaching a low point of 404 rigs in May 2016.[49]  Waitman averred that Defendants' revenue was dependant on this oil rig count because PDC Logic manufactures drill bits for oil wells.[50]

Waitman testified that they began to consider eliminating Plaintiff's position in July or August 2015, and made the decision in October to eliminate Matthews's position as well.[51]  Defendants had a revenue goal for the Houston office of $500,000 in sales by the end of the year, and the inability to achieve this goal factored into the decision to eliminate Plaintiff's position.[52] Neasbitt testified that Plaintiff and Matthews were laid off because "[t]he market was shrinking.  We had too many people in

---

[46]     See id. p. 3.

[47]     See id.

[48]     See id.

[49]     See id. pp. 1-4.

[50]     See Doc. 35-5, Ex. D to Def.'s Mot. for Summ. J., Aff. of Waitman ¶ 4.

[51]     See Doc. 49-3, Ex. 3 to Pl.'s Resp., Dep. of Waitman pp. 87-89.

[52]     See id. pp. 87-88.

Houston for the amount of revenue . . . we made the decision to bring [Matthews and Plaintiff] on when the market appeared to be improved and stabilizing . . . [however] the bottom started to fall out of it again."[53]

Defendants contend that Plaintiff's termination was part of a larger reduction-in-force. Defendants employed ninety-five people in February 2015; by May 2016, its workforce consisted of forty-five employees after lay offs, resignations, and one employee's death.[54] Some upper level management stopped receiving compensation, and employees were furloughed.[55] During October 2015, Hijet laid off seven employees and PDC Logic laid off two.[56]

**D.    Motion for Summary Judgment**

On February 25, 2017, Defendants filed the pending motion for summary judgment, which they supplemented on March 6, 2017.[57] Plaintiff responded on April 27, 2017, and Defendants replied on May 4, 2017.[58]

---

[53]    Doc. 49-2, Ex. 2 to Pl.'s Resp., Dep. of Neasbitt pp. 78.

[54]    See Doc. 35-6, Ex. D-1 to Defs.' Mot. for Summ. J., Hijet Employee Lists pp. 1-2, 7; Doc. 35-7, Ex. D-2 to Defs.' Mot. for Summ. J., PDC Logic Employee Lists pp. 1, 6.

[55]    See Doc. 35-4, Ex. D to Defs.' Mot. for Summ. J., Aff. of Waitman ¶¶ 6-8.

[56]    See Doc. 35-6, Ex. D-1 to Defs.' Mot. for Summ. J., Hijet Employee Lists p. 4; Doc. 35-7, Ex. D-2 to Defs.' Mot. for Summ. J., PDC Logic Employee Lists p. 5.

[57]    See Doc. 35, Defs.' Mot. for Summ. J.; Doc. 38, Defs.' Suppl. to Defs.' Mot. for Summ. J.

[58]    See Doc. 49, Pl.'s Resp.; Doc. 51, Defs.' Reply.

## II.  Legal Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (1992).  If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in his pleading but must respond with evidence showing a genuine factual dispute.  Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

## III. Analysis

In their motion for summary judgment, Defendants "categorically deny" that Plaintiff has made a prima facie case of age or disability discrimination. Defendants assert that their reduction in force due to market conditions was a legitimate, nondiscriminatory reason for Plaintiff's termination. In response, Plaintiff argues that the reduction in force was mere pretext for Defendants' discriminatory actions.

## A.   ADEA & TCHRA

The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish an ADEA claim, a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the but-for cause of the challenged employer decision." Moss v. BMC Software, Inc., 610 F.3d 917, 922 (5th Cir. 2010)(quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177-78 (2009)(internal quotations omitted). When a plaintiff presents credible, direct evidence that discriminatory animus was a substantial factor in the contested employment action, the burden of proof shifts to the defendant to establish by a preponderance of the evidence that, regardless of the forbidden factor, the defendant would have taken the same action. Brown v. E. Miss. Elec. Power Ass'n., 989 F.2d 858, 861 (5th Cir. 1993).

In the absence of direct evidence of age discrimination, the Fifth Circuit analyzes ADEA claims under the modified burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Moss</u>, 610 F.3d at 922 (quoting <u>Berquist v. Wash. Mut. Bank</u>, 500 F.3d 344, 349 (5th Cir. 2007)); <u>see also</u> <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003) (modifying <u>McDonnell Douglas</u>, 411 U.S. 792); <u>but see</u> <u>Gross v. Fin. Servs., Inc.</u>, 557 U.S. at 174-75 n.2 (noting, in dicta, that the U.S. Supreme Court had never decided whether the burden-shifting framework applies to ADEA claims and declining to do so in that case).

Once a plaintiff has established a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its adverse employment action. <u>Moss</u>, 610 F.3d at 922 (quoting <u>Berquist</u>, 500 F.3d at 349). If the defendant satisfies this burden, the plaintiff must "rebut the employer's purported explanation, to show that the reason given is merely pretextual." <u>Id.</u> (citing <u>Jackson v. Cal-Western Packaging Corp.</u>, 602 F.3d 374, 378-79 (5th Cir. 2010)). Pretext can be shown "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" <u>Id.</u> (citations omitted). The ultimate burden of proving intentional discrimination remains at all times with the plaintiff. <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

While the TCHRA is analyzed using the same burden-shifting framework in cases where the plaintiff relies on circumstantial evidence, there is a difference in the causation standard utilized in the third step of the analysis.  <u>Reed v. Neopost USA, Inc.</u>, 701 F.3d 434, 440 (5th Cir. 2012).  In deciding whether an employer's decision was discriminatory, the ADEA requires the plaintiff to "prove that age was the 'but for' cause of the challenged adverse action"; however, the TCHRA only requires that the plaintiff "show that age was a 'motivating factor' in the defendant[s'] decision." <u>Id.</u>

As this court recognized in <u>Richard v. Clear Lake Reg'l Med. Ctr.</u>, Civ. Action No. H-14-358, 2015 WL 3965735, at *6-8 (S.D. Tex. June 30, 2015)(unpublished), the Fifth Circuit appears to be positing different versions of a modified test for the prima facie elements in reduction-in-force ("RIF") cases.

In <u>Woodhouse v. Magnolia Hosp.</u>, 92 F.3d 248, 252 (5th Cir 1996), the court stated that, "[i]n a RIF case, a *prima facie* case is established by evidence that (1) the plaintiff is within the protected age group under the ADEA; (2) he or she was adversely affected by the employer's decision; (3) he or she was qualified to assume another position at the time of the discharge or demotion; and (4) evidence, either circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to

discriminate in reaching its decision."[59]  <u>Woodhouse v. Magnolia</u>

<u>Hosp.</u>, 92 F.3d 248, 252 (5th Cir 1996); <u>Nichols v. Loral Vought Sys.</u>

<u>Corp.</u>, 81 F.3d 38, 40 (5th Cir. 1996); <u>see also</u> <u>Sullivan v. Worley</u>

<u>Catastrophe Servs., LLC</u>, 591 F. App'x 243, 246 (5th Cir.

2014)(unpublished).  District courts applying this version of the

test have found that "[a]n employer is entitled to summary judgment

if there are no other open positions for which the employee was

qualified at the time of his discharge pursuant to a RIF." <u>Coreas</u>

<u>v. L-3 Comm'ns Corp.</u>, No. 3:11-CV-00327-BF, 2012 WL 2959347, at *6

(N.D. Tex. July 20, 2012)(unpublished)(citing <u>Chavarria v.</u>

<u>Despachos Del Notre, Inc.</u>, 390 F. Supp.2d 591, 597 (S.D. Tex.

2005); <u>see also</u> <u>Glick v. Greatwide Logistics Servs., LLC</u>, No. 3:12-

CV-246-L, 2013 WL 2355398, at *7-8 (N.D. Tex. May 29,

2013)(unpublished).

    In 2003, the Fifth Circuit applied a less stringent test for

the prima facie case when a RIF was the reason for termination.  In

<u>Palasota v. Haggar Clothing Co.</u>, 342 F.3d 569, 576 (5th Cir. 2003),

---

[59]     Plaintiff cites these elements and the elements of a typical ADEA
claim in his brief, but analyzes his prima facie case under the RIF elements,
stating "[i]t is undisputed that at the time of his termination [Plaintiff] (58)
was within the protected class, qualified to assume another position, and not
considered for other positions."  In <u>Chavarria v. Despachos Del Notre, Inc.</u>, 390
F. Supp.2d 591, 596 (S.D. Tex. 2005), the plaintiffs called their termination an
"alleged layoff," but "seemingly contradict themselves and subsequently refer to
the standard for proving a 'prima-facie case of age discrimination in a reduction
in workforce or job elimination . . .' and then proceed with the analysis under
the Fifth Circuit's RIF framework."  The court proceeded to treat it as a RIF
case.  Here, the court will also treat this as a RIF case, as Plaintiff
characterized his prima facie case in the context of the RIF elements;
additionally, Plaintiff has provided no evidence to dispute that Defendants laid
off half of their employees during the time relevant to Plaintiff's case.

the court stated that in an ADEA RIF case, a plaintiff must show:
(1) he was discharged; (2) he was qualified for the position; (3)
he was within the protected class at the time of discharge; and (4)
he was replaced by someone not in the protected class, or otherwise
discharged because of his [membership in the protected class]."  In
Palasota, the court stated that because it was a RIF case, the
fourth element required only a showing of "evidence, circumstantial
or direct, from which a fact finder might reasonably conclude that
the employer intended to discriminate in reaching the decision at
issue."  342 F.3d at 576.  Notably, Palasota ignored Woodhouse's
requirement that the plaintiff be qualified for an available
position at the time of his termination in order to state a prima
facie case of discrimination.

Indeed, after Palasota, in an unpublished ADEA RIF opinion,
the Fifth Circuit included in the prima facie elements the
requirement that the plaintiff offer proof that he was qualified to
assume another position at the time of the discharge.  Sullivan,
591 F. App'x at 246.  Two years later, in Caldwell v. KHOU-TV, 850
F.3d 237, 241 (5th Cir. 2017), in a footnote, the court cited the
Palasota elements, stating that this was the test utilized in ADEA
RIF cases in the Fifth Circuit.  Id.

Here, this element of a prima facie case is case dispositive:
if Plaintiff must demonstrate that he was qualified to assume an
open position at the time of his termination, then he has not met

his prima facie burden because there was no open position.  The only positions to which Plaintiff cites were Lacombe's and the territory manager position in San Antonio, both of which were filled at the time of his termination.  However, under the Palasota test, it appears that Plaintiff need only demonstrate that he was qualified for the position that he held, a fact that is not disputed in this case.[60]

The court is guided by Nichols v. Loral Vought Sys. Corp., 81 F.3d at 41, which counseled that, "to establish a prima facie case, a plaintiff need only make a very minimal showing" and Richard, 2015 WL 3965735, at *6-8, which "decline[d] to impose additional requirements that are not uniformly applied in the Fifth Circuit's precedents."  The court will therefore apply the most recent standard set forth in Caldwell.

Plaintiff has raised a genuine issue of material fact as to the prima facie elements.  There is no dispute that Plaintiff was terminated, fifty-eight years old, and qualified for the position he held.  As to the fourth element, there is a genuine issue of material fact whether he was replaced by someone outside the protected class or discharged because of his age.  The evidence demonstrates that Plaintiff and Matthews, ages fifty-eight and sixty-four, respectively, were fired on the same day.  Months

---

[60]  See Doc. 49-3, Ex. 3 to Pl.'s Resp., Dep. of Waitman p. 80 (testifying that Plaintiff was qualified for his position).

later, Stanley, a thirty-seven year old, was hired as vice president of sales, where he assumed Plaintiff's job responsibilities. Plaintiff has alleged a prima facie case of age discrimination.

Turning to Defendants' reason for firing Plaintiff, they have shown that both companies reduced their combined workforces from ninety-five to fifty employees due to the downturn in the oil market. The Fifth Circuit has held that a reduction in force is a legitimate, nondiscriminatory reason for termination of an employee. See E.E.O.C. v. Tex. Instruments, Inc., 100 F.3d 1173, 1181 (5th Cir. 1996).

To demonstrate pretext, Plaintiff points to the facts that Stanley, a thirty-seven year old, assumed his duties, he and Matthews were fired together, and the Houston office was re-staffed with younger employees. Plaintiff also argues that he was clearly better qualified than Lacombe, a younger employee who was retained during the RIF.

In Texas Instruments, the court explained that "[i]f, however, the older employee shows that he was terminated in favor of younger, clearly less qualified individuals, a genuine, material fact issue exists." 100 F.3d at 1181 (citing Walther v. Lone Star Gas Co., 952 F.2d 119, 123 (5th Cir. 1992); see also Nichols, 81 F.3d at 42. To show this, a plaintiff must provide evidence that is "more than merely subjective and speculative." Nichols, 81 F.3d

at 42.  In <u>Nichols</u>, the court explained that, "[o]bviously, work experience is one component of defining who is more 'qualified.' However, <u>Bodenheimer</u>, mandates that greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another.  More evidence, such as comparative work performance, is needed." <u>Id.</u>

Plaintiff's evidence directed to this point includes that he worked in the oil and gas industry longer than Lacombe, he worked for Defendants longer than Lacombe, and Plaintiff had an advanced degree, while Lacombe had only completed one year of college.  This could be considered as evidence of pretext.

Although Defendants assert that Plaintiff's position was eliminated in the reduction in force, the job duties were reassigned within months when a thirty-seven year old assumed the new position of vice president of sales with a higher salary and more responsibilities.  Additionally, while Defendants' workforce in Houston was reduced by the firing of older employees such as Matthews and Plaintiff, new, younger employees were hired within the months following their terminations, while the oil market was still down, as evidenced by the low rig count and price per barrel of oil at that point in time.  Therefore, the court finds that Plaintiff has raised a genuine issue of material fact as to pretext.

**B.  <u>ADA & TCHRA</u>**

Plaintiff alleges claims for disability discrimination under the ADA and the TCHRA. In interpreting the TCHRA, Texas courts "look to analogous federal precedent for guidance." Rodriguez v. ConAgra Grocery Prods. Co., 436 F.3d 468, 473-74 (5th Cir. 2006)(quoting NME Hosps., Inc. v. Rennels, 994 S.W.2d 142, 144 (Tex. 1999)). Therefore, the court will analyze the TCHRA and ADA together, applying the same standards.

Title I of the ADA prohibits discrimination by employers against qualified individuals with disabilities "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); see also Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 360-61 (2001). Discrimination against a qualified individual on the basis of disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A).

An employer must provide reasonable accommodations to an otherwise qualified person with a disability unless the employer can show that the accommodation "would impose an undue hardship" on the employer. 42 U.S.C. § 12112(b)(5)(A). The employee bears the burden of requesting a reasonable accommodation. Jenkins v. Cleco Power, LLC, 487 F.3d 309, 315 (5th Cir. 2007). After the employee

requests an accommodation, "the employer and the employee should engage in a flexible, interactive discussion to determine the appropriate accommodation." <u>EEOC v. Agro Distribution, LLC</u>, 555 F.3d 462, 471 (5th Cir. 2009). Where the breakdown of the interactive process is attributable to the employer's unwillingness to make a good faith effort to reasonably accommodate a qualified employee, the employer violates the ADA. <u>Loulseged v. Akzo Nobel Inc.</u>, 178 F.3d 731, 736 (5th Cir. 1999). However, the employer will not be found liable where the breakdown in the accommodation process is attributable to the employee. <u>Id.</u>

A plaintiff claiming a violation of the ADA with only circumstantial evidence must meet the burden-shifting framework of <u>McDonnell Douglas</u> by making a prima facie showing that (1) he has a disability, or was regarded as disabled; (2) he was qualified for his job; and (3) he was subjected to an adverse employment action on account of his disability.[61] <u>Caldwell</u>, 850 F.3d at 241. Once

---

[61] In their motion for summary judgment, Defendants contend that the modified test for reduction in force ("RIF") cases should apply to both its disability and age discrimination claims, citing <u>Bleiweiss v. Panduit Sales Corp.</u>, Civ. Action No. H-13-0080, 2015 WL 163819, at *12 (S.D. Tex. Jan. 13, 2015)(unpublished), which applied the modified RIF test in both the age and disability discrimination context, citing <u>Woodhouse</u>, which applied the modified RIF test in the ADEA context. 92 F.3d at 252. However, the Fifth Circuit in <u>Caldwell</u>, which was a disability discrimination RIF case, articulated the three elements of a prima facie case listed above. In a footnote, the Fifth Circuit noted that the district court applied the modified RIF test to an ADA claim, but cautioned that the Fifth Circuit "has used this modified test to analyze other forms of employment discrimination–primarily age discrimination–but [has] never applied the modified version of the test in the ADA context." However, because the parties in that case did not dispute whether the plaintiff met his prima facie burden, the Fifth Circuit did not "determine which iteration of the <u>McDonnell Douglas</u> test is more appropriate" in the context of an ADA RIF case. The court will therefore not apply the modified RIF test, but instead, apply the less stringent elements of a prima facie case as articulated in <u>Caldwell</u>.

a plaintiff has made this showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment action. Id. at 242. After the employer has done so, the plaintiff must show that the employer's reason is either pretextual or that the employer's articulated reason for the adverse action was only one reason for the adverse action and the employer was also motivated to take the adverse action due to the plaintiff's disability. E.E.O.C. v. LHC Grp., Inc., 773 F.3d 688, 702 (5th Cir. 2014).

Turning to the first element, Plaintiff may adduce evidence that he is disabled by showing that he: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such impairment. Atkins v. Salazar, 677 F.3d 667, 675 (5th Cir. 2011). It appears undisputed that Plaintiff informed Defendants that he had kidney issues requiring time off work. Working is considered a major life activity.[62] Therefore, Plaintiff meets the Atkins criteria.

Plaintiff must next show that he is a "qualified individual" under the ADA by offering evidence that he, "with or without reasonable accommodation, can perform the essential functions of [his] employment position . . . ." 42 U.S.C. § 12111(8). The ADA counsels that once a request for accommodation has been made by an

---

[62]     See 42 U.S.C. § 12102(2)(A).

employee, "it may be necessary for the employer to initiate an informal, interactive process in order to craft a reasonable accommodation." <u>Silva v. City of Hildalgo, Tex.</u>, 575 F. App'x 419, 423 (5th Cir. 2014)(unpublished)(internal quotations omitted). However, a person who cannot perform the essential functions of his position is not a "qualified individual" under the ADA. <u>Amsel v. Tex. Water Dev. Bd.</u>, 464 F. App'x 395, 400 (5th Cir. 2012)(unpublished). Whether someone is a qualified individual is measured at the time of termination from his position. <u>Id.</u>

Here, Plaintiff requested an accommodation of using four days of earned vacation time to take dialysis training. Plaintiff stated he would undergo dialysis at night, so it would only cause "minimal interference" with his job.[63] This raises a genuine issue of material fact whether Plaintiff was qualified and could perform the essential functions of his position.

As to the third element, it is undisputed that Plaintiff was terminated, which clearly constitutes an adverse employment action. <u>See</u> <u>Washington v. Veneman</u>, 109 F. App'x 685, 689 (5th Cir. 2004)(unpublished))(stating that "only 'ultimate employment decisions' such as . . . discharging . . .qualify as adverse employment actions to establish a prima facie case of discrimination . . .."). Defendants dispute whether Plaintiff's firing was based on his disability, contending that they began

---

[63]    <u>See</u> Doc. 49-1, Ex. 1 to Pl.'s Resp., Dep. of Pl. p. 69.

planning to eliminate Plaintiff's position before he told them of his disability. Plaintiff's evidence, including the fact that he was fired within weeks of disclosing it to his supervisor and days before he took a few days off for dialysis training raises a genuine issue of material fact whether he was fired because of his disability.

As explained above, Defendants have provided a legitimate nondiscriminatory reason for Plaintiff's termination. However, Plaintiff contends that the RIF due to the oil market downturn is a pretext for discrimination based on his disability. Plaintiff points to the fact that he was terminated in October 2015 after disclosing his disability the month before. Additionally, he was fired mere days before beginning his dialysis training.

The Fifth Circuit has held that "the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." Evans v. City of Houston, 246 F.3d 344, 356 (5th Cir. 2001)(quoting Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 409 (5th Cir. 1999)). While Defendants' representatives testified that they decided to eliminate Plaintiff's position before he disclosed his disability in September, this may be inconsistent with other evidence, such as (1) testimony that they made the decision to fire Matthews one month later, (2) Neasbitt told Plaintiff in September that he would be relying on Plaintiff more heavily, yet fired him in October,

and, (3) Martinez, another Houston employee was given a raise in August when Defendants were purportedly considering firing Plaintiff due to the economic downturn. Other evidence offered by Plaintiff on the issue of pretext includes that Defendants retained non-disabled workers in the Houston office and hired Stanley and Rispone months later, while the rig count continued to decline. Stanley, who had no disability, was hired as a vice president to fill Plaintiff's role and was paid a higher salary. Therefore, Plaintiff has raised a genuine issue of material fact as to pretext; Defendants' motion for summary judgment on Plaintiff's disability discrimination claims should be denied.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' Motion for Summary Judgment be **DENIED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers

24

of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 15<u>th</u> day of August, 2017.

_____
U.S. MAGISTRATE JUDGE